Ex parte Jack Warren DAVIS.

No. 495–95.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 17, 1997.

Stanley G. Schneider, Houston, for appellant.

Jeffrey L. Van Horn, Asst. State's Atty., Austin, Ray Taylor, Special Prosecutor, San Antonio, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, Judge.

Applicant, Jack Warren Davis, was convicted of capital murder and sentenced to life in prison. The court of appeals reversed and remanded the cause to the trial court for a new trial. *Davis v. State ("Davis I")*, 831 S.W.2d 426 (Tex.App.-Austin 1992, pet. ref'd). Applicant subsequently filed a pretrial writ of habeas corpus, averring the double jeopardy clauses of the Texas and United States constitutions barred his retrial. The habeas court denied relief, and the court of appeals affirmed. *Ex parte Davis ("Davis II")*, 893 S.W.2d 252 (Tex.App.-Austin 1995). This Court granted applicant's petition for discretionary review to consider the following ground for review:

Does the rationale of *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App.1996), barring a retrial on state double jeopardy grounds following the granting of a mistrial because of prosecutorial misconduct, apply when the cause goes to a verdict but is reversed on appeal?

At applicant's trial, Fred Zain testified for the State as an expert witness. He testified as to DNA tests he allegedly performed on blood and other evidence, testimony which was found by the court at the habeas hearing to be false. The habeas court also found that the testimony of Lt. Richards, another State witness, was probably inaccurate, as it was based on Zain's testimony. The habeas court concluded Zain's conduct was intentional, outrageous and shocked the conscience of the court.

The court of appeals, in reversing applicant's conviction (*Davis I*), sustained applicant's contention the district attorney intimidated a witness, Toth, and, in effect, suborned perjury. Toth testified on direct examination she observed applicant and the victim's sister embrace shortly after the murder was discovered. The significance of this testimony is that it supported applicant's version as to how the victim's blood and saliva got onto applicant's vest (the victim's sister attempted to revive her by giving her CPR; while doing so blood from the victim's wounds stained the clothing she was wearing when she embraced applicant thus staining applicant's vest). On redirect examination she confirmed her earlier testimony as to the embrace.

The next day the State recalled Toth. She testified then that, on second thought, she did not actually see applicant and the victim's sister embrace. She testified she saw what she assumed was a just-concluded embrace. Defense counsel asked Toth if anyone had asked her to change her testimony or had threatened her if she did not do so; she said no one had done so.

Upon learning there had been contact between Toth and the district attorney after her testimony on the first day, applicant moved for a mistrial on the ground of prosecutorial misconduct. The trial court conduct-ed an informal hearing outside the presence of the jury.

The district attorney told the court he reviewed statements by two police officers which said applicant had only come halfway up the stairs to the victim's apartment (Toth testified initially the embrace occurred at the top of the stairs). He also reviewed the sister's testimony that she did not embrace applicant. Subsequently, he asked a police officer to contact Toth and for her to call his office. Upon her arrival, he informed her there was a conflict between her testimony and that of other witnesses and that he would present the matter to the grand jury if he could not resolve the conflict. He said he would indict the officers if they had lied, "or the reverse if she had not told the truth." He told her he had already put one person in jail for lying on the stand last year. He finally asked her if she might have been mistaken about having seen a completed embrace; she said she had been mistaken.

The court then asked Toth, after granting her immunity from prosecution for perjury and assuring her she was not going to jail, if she had changed her testimony in response to the threat from the district attorney to have her brought before the grand jury. She answered, under oath, "that's why I changed it." She also told the court the district attorney had frightened and intimidated her. The district attorney and an employee of his office, Filkins, who was present when Toth appeared at his office to discuss her trial testimony, both testified there was no berating or intimidation of Toth; he only expressed his interest in cleaning up the inconsistencies in the testimony of Toth and the police officers. The district attorney did testify he would take anyone involved who was lying to the grand jury.

After the hearing, the trial court ruled there had not been prosecutorial misconduct that would justify a mistrial. He did indicate he would instruct the jury not to consider Toth's second day of testimony for any purpose, which he subsequently did.

The court of appeals acknowledged "it is not improper per se for a trial court judge or pro-secuting attorney to advise prospective witnesses of the penalties for testifying false-

ly." *Davis I, supra,* at 437, citing *United States v. Blackwell,* 694 F.2d 1325, 1334 (D.C.Cir.1982). The court of appeals characterized the actions of the district attorney as having gone far beyond a cautious or judicious warning to Toth to tell the truth or risk a perjury charge, noting the meeting took place outside the presence of the trial judge. The court of appeals criticized strongly the district attorney for giving the jury the impression that it was *Toth* who first contacted him because she thought her initial testimony was misleading when the opposite was true. The court of appeals found this to be the knowing use of perjured testimony, found it to have denied applicant a fair trial and violated his due process rights, and held the trial court erred in denying applicant's motion for mistrial.[1]

At the habeas hearing, the court's findings of fact noted: (1) certain key items of evidence were lost or mishandled, including hair and blood samples; (2) a taped statement of Marci French, made the night of the homicide, was erased by the police. French, a witness who testified at trial, did make a second taped statement the day after the homicide; (3) a second witness, Hanus, testified the two statements were contradictory as to French's description of the persons she observed leaving the victim's apartment the night of the crime; and (4) Zain committed aggravated perjury and tainted all of the evidence he handled.

The court of appeals, in affirming the denial of habeas relief, concluded "when a trial proceeds to conclusion despite a legitimate claim of serious prejudicial error and the conviction is reversed on appeal, retrial is not jeopardy-barred." *Davis II,* 893 S.W.2d at 254. *See Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

The Supreme Court has held on several occasions that the concept of "continuing jeopardy" is applicable where an individual has obtained a reversal of his conviction. That is because he was not denied his right under the double jeopardy clause to have the charges against him tried to a verdict before the first tribunal. Whereas, where a mistrial takes place, he is denied the opportunity to have the case decided by the first tribunal. Therefore, retrial after reversal of his conviction is not barred by the double jeopardy clause of the United States Constitution. *Price v. Georgia, supra; Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311 (1984); *Montana v. Hall,* 481 U.S. 400, 402–403, 107 S.Ct. 1825, 1826, 95 L.Ed.2d 354 (1987).

> It is a venerable principle of double jeopardy jurisprudence that the successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict (citation omitted), poses no bar to further prosecution on the same charge ... Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they are now in protecting against the effects of improprieties at the trial or pre-trial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interests.

*Montana v. Hall,* 481 U.S. at 402–03, 107 S.Ct. at 1826; citing *United States v. Tateo,*

---

1. Given the importance of Toth's initial testimony and the taint resulting from the actions of the district attorney, the court of appeals (*Davis I*) found the instruction to the jury to disregard Toth's subsequent testimony insufficient. The court of appeals also sustained applicant's tenth point of error (application for warrant to take a sample of applicant's blood not supported by affidavit establishing probable cause; *see* Tex. Code Crim. Proc Art. 18.01) and his eleventh point of error (trial court erred in refusing to permit applicant an opportunity to impeach State witness Balonis as to bias or prejudice).

377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).

■ In general, double jeopardy "does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988). There are a few exceptions to this rule. For example, if a conviction is reversed because the evidence is legally insufficient to convict, retrial is barred because, for double jeopardy purposes, this is equivalent to a judgment of acquittal. *See United States v. Doyle,* 121 F.3d 1078, 1083 (7th Cir.1997), citing *Lockhart v. Nelson,* 488 U.S. at 39, 109 S.Ct. at 290.

It is clear applicant's retrial is not barred by the double jeopardy clause of the Fifth Amendment to the United States Constitution.

■ We note initially that this Court, as well as the Texas Supreme Court, has held that the Texas Constitution gives greater protection in some instances to Texas citizens than does its federal counterpart. *Davenport v. Garcia,* 834 S.W.2d 4, (Tex.1992); *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim. App.1991); *Autran v. State,* 887 S.W.2d 31 (Tex.Crim.App.1994) (plurality op.). However, until recently, we have consistently held the Texas and United States constitutions' double jeopardy provisions provide substantially identical protections. *Phillips v. State,* 787 S.W.2d 391 (Tex.Crim.App.1990); *Stephens v. State,* 806 S.W.2d 812 (Tex.Crim. App.1990). Prior to our opinion in *Bauder, supra,* we have applied the standard of review set forth by the United States Supreme Court in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), to double jeopardy claims arising out of instances where mistrials were provoked by the State. *Crawford v. State,* 703 S.W.2d 655

(Tex.Crim.App.1986); *Collins v. State,* 640 S.W.2d 288 (Tex.Crim.App.1982) (panel op.); *Anderson v. State,* 635 S.W.2d 722 (Tex. Crim.App.1982). The Supreme Court held the double jeopardy clause of the Fifth Amendment is not offended by a second prosecution for the same offense where the earlier proceeding was terminated by mistrial at the defendant's request unless the State deliberately set out to provoke the defendant's motion for mistrial. *Oregon v. Kennedy, supra.*

In *Bauder* we held that, under the Texas Constitution's double jeopardy clause, "a second prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only where the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an event for which he was responsible would require a mistrial at the defendant's request ... He is accountable for mistrials properly granted by the trial judge when the events making a mistrial necessary were of his own deliberate or reckless doing." *Bauder, supra,* at 699.[2]

■ *Bauder,* however, is not dispositive with respect to the present case due to a most significant difference: applicant in the present case had his conviction reversed after a full trial on the merits whereas in *Bauder* applicant's trial was never completed (on two occasions) due to State-provoked mistrials. At least one federal appellate court has held that "[double jeopardy would bar retrial after reversal] only where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *United States v. Wallach,* 979 F.2d 912, 916 (2nd Cir.1992), *cert. denied,* 508 U.S. 939, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993).[3] The Second Circuit

---

**2.** Several state supreme courts have explicitly adopted the *Oregon v. Kennedy* standard under their state constitutions. *Robinson v. Commonwealth,* 18 Va.App. 814, 447 S.E.2d 542 (1994); *Stamps v. Commonwealth,* 648 S.W.2d 868 (Ky. 1983); *State v. White,* 322 N.C. 506, 369 S.E.2d 813 (1988). The Pennsylvania Supreme Court's

reasoning in *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992) is similar to that of *Bauder.*

**3.** *But see,* however, *United States v. Oseni,* 996 F.2d 186, 187–188 (7th Cir.1993), in which the court specifically rejected the Second Circuit's

noted that this standard embraced that set forth by the Supreme Court in *Oregon v. Kennedy* to bar retrial after a mistrial caused by egregious and intentional prosecutorial misconduct. Applicant has not directed us to any cases, however, where the Supreme Court has explicitly extended *Oregon v. Kennedy* to apply to instances where verdicts of guilty have been reversed on appeal due to prosecutorial misconduct, and therefore holding retrials as jeopardy-barred.

Applicant contends that, under *Bauder,* if mistrial had been granted in this case, retrial of applicant would have been barred. However, this is not the ground on which applicant's petition for discretionary review was granted; as noted earlier we granted review to consider whether the Texas Constitution's double jeopardy protections, as interpreted by this Court in *Bauder,* apply where an applicant has obtained a reversal of his conviction on appeal, due at least in part to prosecutorial misconduct at trial.

With respect to the testimony of Fred Zain, we note the habeas court did not make any findings of fact indicating the State knew, or should have known, Zain's testimony was false or perjured. Indeed, the habeas court found Zain *misled* Lt. Richards, a key State witness, regarding the forensic facts, thus causing Lt. Richards' testimony and conclusions to be probably inaccurate. While we are not bound by the findings of fact and conclusions of law of the habeas court, we generally defer to them if they are supported by the record, and, in this instance, find them to be reliable, supported by the record, and entitled to such deference. *Ex parte Turner,* 545 S.W.2d 470, 473 (Tex. Crim.App.1977); *Ex parte Adams,* 768 S.W.2d 281, 288 (Tex.Crim.App.1989); *Ex parte Mowbray,* 943 S.W.2d 461 (Tex.Crim. App.1996). We hold that the State did not intentionally or recklessly cause applicant's trial to be tainted by Zain's perjured testimony or Lt. Richard's inaccurate testimony.

The habeas court also found the police mishandled certain key items of physical evidence and also erased a tape recorded statement of Marci French that may have been exculpatory or otherwise may have been useful to applicant to impeach French. There is no question that applicant would have been entitled to access to the missing tape. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The record does not support any assertion that the erasure of the tape or the mishandling of physical evidence was the result of intentional or reckless misconduct by the State. *Bauder* does not stand for the proposition that retrial is barred by the Double Jeopardy Clause of the Texas Constitution where a mistrial is granted due to the prosecutor's simple negligence or mere sloppiness. *Bauder* certainly does not forbid, on state constitutional jeopardy grounds, a retrial following a reversal on appeal. Furthermore, the sloppiness and negligence was on the part of the police; the proper remedy for such police actions that, in effect, denied applicant due process of law is retrial. *Brady v. Maryland, supra; Kyles v. Whitley, supra.*

The actions of the prosecutor in the present case were reprehensible. The habeas court found the prosecutor misled the jury as to why certain evidence was not tested and misled the jury as to the quality of the investigation conducted by the police (he told the jury it was excellent when he had, before trial, complained in writing about the lost evidence and negligence of the police department). As to his out-of-court conversation with witness Toth, while we find it was poorly and coercively handled, we do not agree with the court of appeals in *Davis I* that Toth was encouraged to perjure herself or otherwise misrepresent her observations to the jury. We are troubled by the false impression given to the jury that Toth approached the prosecutor out of concern that her initial testimony was potentially misleading when it was the prosecutor who approached her. Still, we are not persuaded that the actions of the prosecutor were so egregious as to bar the retrial of applicant on

holding in *Wallach,* extending *Oregon v. Kennedy* to bar retrial following a reversal due, in part, to

prosecutorial misconduct.

Texas constitutional double jeopardy grounds, as he has already been accorded the relief to which he was entitled: reversal of his conviction on appeal.

Applicant cites a recent decision of the New Mexico Supreme Court in support of his contention that the holding of *Bauder* be extended to cases involving prosecutorial misconduct where convictions have been reversed on appeal (thereby barring retrial by the Texas Constitution's double jeopardy provisions). *State v. Breit*, 122 N.M. 655, 930 P.2d 792 (1996). In *Breit*, applicant's conviction was reversed, and, on double jeopardy grounds, the court ordered applicant discharged from any further prosecution in that cause.

The court emphasized that "when a trial is severely prejudiced by prosecutorial conduct, the double jeopardy analysis is identical, whether the defendant requests a mistrial, a new trial, or, on appeal, a reversal." *Breit, supra*, 930 P.2d at 797. Yet, the court fails to cite any federal appellate court opinions or opinions of other state high courts [4] in support of its holding that double jeopardy principles are applicable where a defendant has obtained a reversal of his conviction on appeal due, at least in part, to prosecutorial misconduct during his first trial, thereby barring his retrial.[5]

What took place in the present case is, in many respects, similar to what we found to compel reversal on due process grounds in *Cook v. State*, 940 S.W.2d 623 (Tex.Crim.App. 1996). In *Cook*, we found prosecutorial misconduct, which included withholding of potentially exculpatory evidence,[6] combined with the false and misleading testimony of a state's expert witness concerning fingerprint evidence, violated applicant's rights under the Due Process Clause of the United States Constitution, as well as his rights under the due course of law provisions of the Texas Constitution (Art. I, Secs. 13 and 19). We declined, however, to accept applicant's contention the prosecution's misconduct was so egregious as to bar retrial on either state or federal double jeopardy grounds.

As the court of appeals noted, "in considering other cases where the facts and circumstances were fully as outrageous and shocking as those in this case, the Court of Criminal Appeals has ordered a retrial and not the dismissal of charges and an acquittal." *Davis II*, 893 S.W.2d at 257, citing *Ex parte Adams*, 768 S.W.2d 281 (Tex.Crim. App.1989); *Ex parte Brandley*, 781 S.W.2d 886, 887 (Tex.Crim.App.1989). We agree with the court of appeals that retrial, not dismissal of the charge and acquittal, is the proper remedy.

Fundamentally, this is a due process case. It has long been the law that where a defendant's due process rights have been violated to the extent that he has been denied a fair trial, the proper remedy is reversal of his conviction and remand of the cause to the trial court for further proceedings. *Brady v. Maryland, supra; Kyles v. Whitley, supra; United States v.Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). We decline applicant's invitation to extend our interpretation of the Texas Constitution's double jeopardy protections in *Bauder* to instances like the present case which involve due process concerns for which the well-established remedy of reversal is intended to address. *Bauder* applies only where a mistrial has been granted due to reckless or intentional prosecutorial misconduct; there-

---

**4.** The North Carolina Supreme Court did affirm the North Carolina Court of Appeals' holding that a retrial following reversal on appeal should be jeopardy-barred where the reversal was due to prosecutorial overreaching or harassment aimed at prejudicing the defendant's chances for acquittal, whether in the current trial or a retrial. *State v. White*, 85 N.C.App. 81, 354 S.E.2d 324, 329 (1987), aff'd, 322 N.C. 506, 369 S.E.2d 813 (N.C.1988).

**5.** The actions of the prosecutor in *Breit* were pervasively improper, intentional, and tainted nearly every phase of the trial, from opening statement to closing argument. *See Breit, supra, Appendix*. The prosecutorial misconduct in the present case, though significant, is by no means comparable to that which took place in *Breit*.

**6.** This evidence included evidence of misrepresentation of a deal between a convicted criminal and the State to testify (falsely, it turned out) against applicant, evidence pointing to another person as a viable suspect, and evidence concerning a key prosecution witness (Hoehne), which indicated he may have perjured himself.

fore it does not apply to the present case as no mistrial was granted and we further find no abuse of discretion on the part of the trial court in its denial of applicant's mistrial motion.

Accordingly, we decline to apply our holding in *Bauder* to instances, like the present case, to bar a retrial, on Texas constitutional double jeopardy grounds, where an applicant has had his conviction reversed on appeal due, at least in part, to prosecutorial misconduct.[7]

We affirm the judgment of the court of appeals.

KELLER, J., concurs in the result.

OVERSTREET, J., dissents.

McCORMICK, Presiding Judge, concurring.

I join the majority opinion in this case. I write separately to respond to the philosophically judicial activist approach to constitutional interpretation advocated in the dissenting opinion.

The majority opinion adopts as a matter of state constitutional law the well-settled rule that is applied in almost every state and federal jurisdiction in this country: double jeopardy principles do not bar a reprosecution when a conviction is reversed on appeal

for ordinary "trial error." This rule strikes a proper balance between the community's legitimate interest in fighting crime and a defendant's legitimate double jeopardy interests.

The dissenting opinion would adopt as a matter of state constitutional law a mostly unprecedented rule that double jeopardy principles bar a reprosecution when a conviction is reversed on appeal for what the dissenting opinion calls "prosecutorial misconduct." This rule would not be limited to just this case and these facts but would be applicable in every case where at least five judges on this Court believed "prosecutorial misconduct" occurred. This is an awesome power the dissenting opinion advocates the judiciary should reserve for itself especially when one considers that most times "prosecutorial misconduct" is not so easily defined.[1] For example, the author of the dissenting opinion has taken the position that "prosecutorial misconduct" occurs and factually and legally guilty criminals walk free even when the prosecution does not intend to engage in misconduct and makes an honest mistake. See *Bauder v. State*, 921 S.W.2d 696, 701–02 (Tex.Cr.App.1996) (Baird, J., concurring) (prosecutors are "responsible" for their "misconduct" without regard for their *mens rea* ).[2]

---

**7.** The dissent fails to recognize the considerable adverse impact of a reversal of a conviction on the State. The State must decide whether or not to retry the cause, a decision often complicated by the passage of several years since the first trial, the possible loss of evidence over time and the fact that witnesses may no longer be available or their memories of the event may be less reliable, rendering their testimony less accurate. The cost to the State of a "second bite of the apple" is significant, financially and otherwise (indeed, the State often elects *not* to pursue a retrial following a reversal; *see,* e.g., *Ex parte Brandley, supra* ); the dissent's implicit dismissal of this fact is troubling. Our holding in the present cause cannot be read as sanctioning prosecutorial misconduct, misconduct for which the well-established remedy of reversal was correctly applied in this case by the court of appeals. We should decline to create a new remedy, the expansion of *Bauder* to bar retrial on Texas constitutional grounds after reversal due to prosecutorial misconduct, where there is no compelling need to do so. The well-established remedy of reversal has not been demonstrated as being

inadequate to deter prosecutorial misconduct so as to justify an extension of *Bauder.*

Finally, the evidence that the State intentionally acted in an improper manner at the first trial so as to avoid the risk of an acquittal is simply not supported by the record. Assuming, *arguendo,* there was no prosecutorial misconduct during appellant's trial, he *does not* persuade us the evidence was factually or legally insufficient to support a conviction, which would bar his retrial. *Lockhart v. Nelson, supra.*

**1.** This concurring opinion addresses "prosecutorial misconduct" in general and not the particular conduct in this case. This case does not present the issue of whether "prosecutorial misconduct" occurred, so it is unnecessary to engage in a feel-good and pointless exercise of "openly condemning" the conduct that occurred in this case as footnote seven of the dissent would have us do.

**2.** Of course, the position taken by this author in *Bauder* garnered only one vote and, therefore, does not constitute the law of this State even

Our citizens have other remedies aside from judicially imposed rules for dealing with "prosecutorial misconduct." See *Bauder*, 921 S.W.2d at 706 fn. 5 (McCormick, P.J., dissenting). Absent clear intent to the contrary in Texas' constitutional double jeopardy provisions, our duty is to leave the remedy for "prosecutorial misconduct" to the legislative and political processes for the citizens to decide.

Most questions of constitutional interpretation involve giving effect to the intent of the voters who adopted the constitutional provision at issue. See *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 585 (Tex. Cr.App.1993); *Bauder*, 921 S.W.2d at 708 (McCormick, P.J., dissenting). This means the judiciary when interpreting the Constitution has no power to legislate its own policy preferences behind the Legislature's back. See *Bauder*, 921 S.W.2d at 705–08 (McCormick, P.J., dissenting). Questions of constitutional interpretation often involve a delicate process of balancing the interests of the community and the interests of the individual. See *Bauder*, 921 S.W.2d at 705–08 (McCormick, P.J., dissenting).

When the dissenting opinion speaks of "breathing life" into our Constitution by effectively interpreting it to provide "more protection" to criminals, the community's interest in protecting ourselves from dangerous criminals also suffers. See *Bauder*, 921 S.W.2d at 703 fn. 2 (McCormick, P.J., dissenting). Interpreting our Constitution to provide "more protection" to criminals also necessarily puts "more restrictions" on the community's efforts to combat crime. If we are to interpret our Constitution effectively to provide "more protection" to criminals, then the constitutional provision at issue should clearly require us to do so.

Texas' double jeopardy clause contains a simple command or prohibition. The "plain" language and history of this clause indicates it was intended to bar a reprosecution when a case has proceeded to a final verdict of guilty or acquittal.[3] See *Bauder*, 921 S.W.2d at 706 fn. 5 (McCormick, P.J., dissenting). Texas' double jeopardy clause actually provides "less protection" than that provided by its federal counterpart, at least as interpreted by the Supreme Court. See *Bauder*, 921 S.W.2d at 706 fn. 5 (McCormick, P.J., dissenting). This also applies to other Texas constitutional provisions. See *Heitman v. State: The Question Left Unanswered*, 23 St. Mary's L.J. at 956–74. This interpretation of Texas' double jeopardy provision strikes a proper balance between the competing interests.

Completely absent from the approach to constitutional interpretation in the dissenting opinion is any consideration of the legitimate interests of the community or any sense of judicial restraint. See *Autran v. State*, 887 S.W.2d 31, 43–49 (Tex.Cr.App.1994) (McCormick, P.J., dissenting). When the reader strips away the dissenting opinion's rhetorical flourish and its discussion of out-of-state cases that have little, if anything, to do with interpreting our Constitution, the reader should realize that the author of the dissenting opinion is attempting to legislate his own policy preferences under the guise of constitutional interpretation. This approach has less to do with interpreting the Constitution and more to do with legislating behind the Legislature's back.

Finally, the dissenting opinion seems enamored with Justice Brennan's approach to constitutional interpretation. I would not adopt Justice Brennan's brand of judicial activism for interpreting our Constitution. Such an approach has never heard of judicial restraint, knows no bounds to the limits of judicial power and shows no respect to the legislative process or to the legitimate interests of law-abiding citizens. See Jeff Jacoby, *Justice Brennan's Legacy: An Imperious Judiciary*, The Houston Chronicle (for over 34 years on the bench, Justice Brennan "repeatedly shoved aside text and precedent,

though the author of the dissenting opinion attempted to pass his concurring opinion in *Bauder* off as the majority holding of the Court. See *Bauder*, 921 S.W.2d at 701–02 (Baird, J., concurring) (one-judge plurality opinion with no precedential value).

3. When a case is reversed on appeal for ordinary "trial error," the case has not proceeded to a final verdict.

trampling the rights of citizens and legislatures in order to chisel his own notions of justice into American law" with his chief legacy being "his judicial authoritarianism: his assertion that in any political controversy, judges have the last word—not voters, not lawmakers, not elected representatives").[4]

With these comments, I join the majority opinion's exercise in judicial restraint.

MEYERS, Judge, concurring.

Appellant claims the prosecutor engaged in misconduct sufficiently egregious to have warranted the granting of his motion for a mistrial and a consequential jeopardy bar to retrial. Even though his mistrial motion was not granted and the trial proceeded to verdict, appellant says retrial should be barred because it would have been barred if the trial court had ruled properly and granted his mistrial motion instead of erroneously denying it. The Court of Appeals held that when a trial court proceeds to a verdict despite a legitimate claim of serious prosecutorial misconduct and the conviction is reversed on appeal due to the misconduct, retrial is not jeopardy barred. *Ex parte Davis*, 893 S.W.2d 252 (Tex.App.—Austin 1995). We granted review to decide whether the Court of Appeals erred in this holding.

It is not altogether clear on what basis the majority resolves this case. A great deal, if not most, of the Court's opinion is devoted to re-analyzing whether the prosecutor's actions were sufficiently reprehensible to have warranted the granting of appellant's motion for mistrial under *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App.1996). That is not the ground upon which we granted review, however.[1] The Court's opinion contains some mention of double jeopardy principles and their application in the mistrial context, but there does not appear to be any analysis upon which the Court's holding decisively rests.

We fail the bench and bar in our role as a discretionary review court when we avoid directly grappling with the legal question presented in favor of resolving the case on its facts. This said, I will briefly outline the rationale which I believe supports the Court's judgment today. The question upon which the parties have turned to this Court for guidance is whether a defendant is entitled to have retrial jeopardy barred after an appellate court determines that his motion for mistrial based on prosecutorial misconduct (whether it be misconduct repugnant to *Kennedy*, supra, or *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App.1996)) was erroneously denied.

Analysis should begin with *Kennedy*. There the Supreme Court, albeit in dicta, assumed that double jeopardy would not bar retrial upon an appellate determination that the trial court erroneously denied the defendant's motion for mistrial based on prosecutorial misconduct:

> Were we to embrace the broad and somewhat amorphous standard adopted by the Oregon Court of Appeals, we are not sure that criminal defendants as a class would be aided. Knowing that the granting of the defendant's motion for mistrial would all but inevitably bring with it an attempt to bar a second trial on grounds of double jeopardy, the judge presiding over the first trial might well be loath to grant a defendant's motion for mistrial. *If a mistrial were in fact warranted under the applicable law, of course, the defendant could in many instances successfully appeal a judgment of conviction on the same grounds that he urged a mistrial, and the Double Jeopardy Clause would present no bar to retrial.*

*Kennedy*, 456 U.S. at 676, 102 S.Ct. at 2089–90 (footnotes omitted)(emphasis added). In a footnote to these comments, the Court

---

4. The author of the dissenting opinion has labeled this discussion as an *"ad hominem"* or personal attack on the late Justice Brennan. It is not. What it is is a discussion of my perception of the role of the judiciary and a criticism of those who serve on high courts and attempt to wield the philosophical sword of judicial activism.

1. Even the other concurring opinion recognizes that "this case does not present the issue of whether 'prosecutorial misconduct' occurred." *McCormick, P.J., concurring* at 15, n. 1.

further noted that it had consistently held there is no jeopardy bar to retrial when a defendant has been successful in getting a court to set his conviction aside unless it is reversed for insufficient evidence. Four judges in concurrence, referred to the majority's assumption that an appellate court "would not be obligated to bar reprosecution as well as reverse the conviction" as "irrational." *Id.* at 688 n. 22, 102 S.Ct. at 2095 n. 22 (Stevens, J., concurring, joined by Brennan, Marshall, and Blackmun, J.J.). The question is why would a majority of the Supreme Court consider jeopardy no bar to retrial after an appellate determination that a mistrial should have been granted for prosecutorial misconduct, while four other justices view that position as "irrational." As is often the case in law, there are persuasive arguments on both sides of the matter.

Several courts have set forth the competing sides of this issue, roughly reflecting the arguments presented by the parties in this case. The 8th Circuit Court of Appeals addressed the issue with clarity in *United States v. Singer*, 785 F.2d 228 (8th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 273, 93 L.Ed.2d 249 (1986):

> There is good reason to argue that a criminal defendant whose conviction over a timely motion for mistrial is reversed because of any sort of governmental misconduct should be placed on equal footing with a defendant whose motion properly is granted. The defendant obtains mistrial only if the trial judge apprehends the sufficiently prejudicial misconduct. In reversing, the appellate court simply corrects the trial court's error. The right of a criminal defendant not to be twice placed in jeopardy should not hang on which court correctly determines that misconduct infected the trial. As the Supreme Court stated in *Burks v. United States*, [437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)], when explaining why double jeopardy concerns preclude retrial upon reversal for insufficient evidence, "[T]o hold otherwise would create a purely arbitrary distinction between those in petitioner's position and others who would enjoy the benefit of a correct decision by the District Court."

But there is danger in drawing too much from *Burks'* grudging exception. Indeed, in *Burks* itself, the Court stated that governmental misconduct was not among the grounds for reversal that implicated the double jeopardy clause. And as the Court added in *Oregon v. Kennedy:* "This Court has consistently held that the Double Jeopardy Clause imposes no limitation upon the power of the government to retry a defendant who has succeeded in persuading a court to set his conviction aside, unless the conviction has been reversed because of insufficiency of the evidence." If the bedrock interest supporting the double jeopardy prohibition is protection of the defendant's "valued right" to have a verdict rendered by the first jury, then the dangers which the prohibition seeks to avoid are more attenuated when the first trial goes to verdict, since the defendant has not lost his chance for acquittal by the first jury. Thus it can persuasively be argued that the double jeopardy clause should not be read to impose the drastic remedy of dismissal of the indictment following reversal of a conviction on the basis of misconduct.

*Id.* at 239–40 (citations omitted). Both sides of the issue have also been well articulated by the Fifth Circuit Court of Appeals:

> ... When a defendant moves for a mistrial because of a prosecutor's misconduct ..., an appellate reversal based on that same misconduct seems equivalent to a determination that the district court erred in ruling on the mistrial motion. It seems anomalous to say that identical prosecutorial misconduct will create a constitutional bar to retrial when the district court correctly grants a mistrial but not when the district court erroneously denies the mistrial request.
>
> On the other hand, under *Kennedy* the double jeopardy clause is concerned only with prosecutorial misconduct that is intended to provoke a mistrial. When a mistrial is not declared, then the prosecutor's efforts have been unsuccessful. The dangers that the *Kennedy* exception was intended to prevent—that the defendant might lose his "valued right to complete his trial before the first jury," and that the

prosecutor might be seeking a more favorable opportunity to convict—are more attenuated when the defendant is convicted by the first jury but an appellate court reverses for prosecutorial misconduct. In such a case, the defendant has not lost his chance for an acquittal by the first jury, and it seems unlikely that any prosecutor would intentionally lay a basis for appellate reversal in order "to subvert the protections afforded by the Double Jeopardy Clause."
*United States v. Singleterry*, 683 F.2d 122, 124 (5th Cir.), *cert. denied*, 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 518 (1982).

To summarize, the argument in support of allowing a jeopardy bar after an appellate determination is based largely on the idea that a defendant's jeopardy rights should not turn upon which court makes the determination that the government's misconduct infected the proceedings. The argument in opposition to permitting a jeopardy bar after an appellate determination looks beyond the government conduct to the actual fruition of that action. In my view, the later position, while it may seem unfair, is more consistent with the purposes underlying the double jeopardy bar in *Kennedy* and *Bauder* situations.

The Double Jeopardy Clause protects a defendant against multiple prosecutions for the same offense. In the mistrial context the Supreme Court has recognized that as part of the prohibition against multiple prosecutions, the Double Jeopardy Clause affords a defendant "the valued right to have his trial completed by a particular tribunal." *Kenne-*

*dy*, 456 U.S. at 671–72, 102 S.Ct. at 2087 (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). This right lies at the heart of the narrow exception[2] permitting a jeopardy bar where a mistrial was granted pursuant to the defendant's motion based upon prosecutorial misconduct of the nature discussed in *Kennedy* (or under the Texas Constitution, *Bauder*). In *Bauder*, we emphasized the right that is lost when a mistrial is granted as a result of prosecutorial misconduct, stating, "When this happens, we think the government should bear responsibility for denying the defendant his right, secured by the Texas Double Jeopardy Clause, *to be tried in a single proceeding by the jury first selected*." *Bauder*, 921 S.W.2d at 699 (emphasis added). When the State's conduct does not in fact invoke the mistrial, then the defendant gets his right to be tried in a single proceeding by the jury first selected, although admittedly the proceeding has been tainted. Once a proceeding to verdict has occurred, a defendant's double jeopardy rights are not implicated by a mistrial situation.[3] There has not been a mistrial. The fact that there *should have been* a mistrial is trial error that the defendant can raise on appeal, to which jeopardy principles do not apply.

We addressed this issue over fifteen years ago in *Durrough v. State*, 620 S.W.2d 134 (Tex.Crim.App.1981), there rejecting the defendant's claim that his retrial should be barred by double jeopardy because of prosecutorial misconduct in an earlier trial:

The Double Jeopardy Clause does protect a defendant against governmental actions

2. After a verdict is rendered, whether a conviction or acquittal, the State cannot reprosecute for the same offense. The same is not true when the defendant has sought and received a reversal of his conviction (unless the reversal is based upon insufficient evidence under *Burks*). In these circumstances, the State can retry the defendant. When trial is aborted prior to a verdict pursuant to a mistrial over the defendant's objection, double jeopardy does not bar retrial as long as the mistrial was justified by "manifest necessity." When the mistrial is granted at the defendant's request, however, double jeopardy generally will not bar retrial. The one narrow exception to this rule was fashioned by the Supreme Court in *Kennedy* and, under the Texas Constitution by this Court in *Bauder*—when the mistrial motion

granted at the defendant's request is based upon prosecutorial misconduct that was intended to induce a mistrial or when the prosecutor was aware but conscientiously disregarded the risk that his conduct would compel the defendant to request a mistrial.

3. The State suggests in its brief that evidence tainted by the prosecutorial misconduct should not be admitted on retrial. I would be inclined to leave this for the trial court to address when raised by the parties on retrial. *See Cook v. State*, 940 S.W.2d 623, 628 (Tex.Crim.App.1996)(plurality opinion)(stating that evidence tainted by prosecutorial misconduct in first trial not admissible on retrial based on due process and fundamental fairness).

intended to provoke mistrials so as to afford the prosecution a more favorable opportunity to convict the defendant.[4] But when the trial proceeds to its conclusion despite a legitimate claim of serious prejudicial error, the Double Jeopardy Clause will present no obstacle to a retrial if the conviction is reversed on appeal. In the present case the alleged misconduct did not result in a mistrial. The appellant was found guilty of capital murder and sentenced to death. That judgment was reversed on appeal and the case was remanded for a new trial. We reject appellant's contention that the alleged misconduct was a bar to further prosecution in this case.

(citations omitted).

Appellant's argument focuses on the nature of the government's conduct alone, rather than the circumstances provoked by the conduct. If conduct alone were at issue, the further question would be whether appellant need request a mistrial at all. But it is the circumstances arising from the government misconduct that justify a jeopardy bar under *Kennedy* and *Bauder*—it is the fact that the government misconduct leads to the granting of a mistrial and consequential denial of the defendant's right to have that jury render a verdict, that justifies the narrow exception to the rule that jeopardy does not bar retrial when mistrial arises from a defendant's motion.

I recognize that this view would place no small amount of responsibility on trial judges to conscientiously consider and rule on motions for mistrials based on prosecutorial misconduct under *Kennedy* or *Bauder*. But trial courts are better positioned than appellate courts to determine when circumstances cry out for a mistrial. I would trust trial courts to grant mistrials when required under the law irrespective of the jeopardy implications, knowing that a jeopardy bar would not be imposed if the mistrial were denied and such denial was found to be in error by an appellate court.[5]

For these reasons, I concur in the judgment of the Court.

BAIRD, Judge, dissenting.

In the criminal justice system, the prosecutor "is a trained attorney who must aggressively seek convictions in court on behalf of a victimized public. At the same time, he must place foremost in his hierarchy of interests the determination of truth." *United States v. Bagley*, 473 U.S. 667, 696, 105 S.Ct. 3375, 3391, 87 L.Ed.2d 481 (1985) (Brennan, J., dissenting). Believing art. I, § 14 of the Texas Constitution bars retrial following the erroneous denial of a motion for mistrial based on prosecutorial misconduct, I dissent.

## I.

### Texas and Federal Double Jeopardy
#### A.

Art. I, § 14 of the Texas Constitution guarantees "[n]o person, for the same offense shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offence, after a verdict of not guilty in a court of competent jurisdiction." Similarly, the Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." These guarantees protect criminal defendants against a second prosecution for the same offense after an acquittal, against a second prosecution for the same offense after a conviction, and against multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The basis of these safeguards is the belief that "the State

---

4. For this proposition, we cited *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976), a pre-*Kennedy* opinion in which the Supreme Court stated, "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions."

5. A trial court's granting of a mistrial under *Kennedy* or *Bauder*, is not necessarily unreviewable. The State may seek to retry the defendant, whereupon the defendant may assert a claim of double jeopardy. The State can appeal from a determination that jeopardy lies. *See* Tex.Code Crim. Proc. Ann. art. 44.01(a)(4)(state can appeal from order sustaining claim of former jeopardy).

with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty." *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

### B.

An integral protection of the Double Jeopardy Clause is the bar to retrial after a mistrial due to prosecutorial misconduct. In *United States v. Dinitz,* 424 U.S. 600, 606–607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976), the Supreme Court stated:

> ... Where ... a mistrial has been declared, the defendant's "valued right to have his trial completed by a particular tribunal" is also implicated. Since Mr. Justice Story's 1824 opinion for the court in *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165, this Court has held that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether "there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated." (Internal citations omitted.)

The Court made the distinction between the defendant's request for a mistrial and the *sua sponte* granting of one by the trial judge. Even with error, the defendant has the choice of proceeding to verdict with the first jury, unless the defense requests the mistrial. In explaining why misconduct invokes the guarantee of the Fifth Amendment the Court stated:

> ... But it is evident that when judicial or prosecutorial error seriously prejudices a defendant, he may have little interest in completing the trial and obtaining a verdict from the first jury. The defendant may reasonably conclude that a continuation of the tainted proceeding would result in a conviction followed by a lengthy appeal

and, if a reversal is secured, by a second prosecution. *In such circumstances, a defendant's mistrial request has objectives not unlike the interests served by the Double Jeopardy Clause—the avoidance of the anxiety, expense, and delay occasioned by multiple prosecutions.*[1]

*Id.,* 424 U.S. at 608, 96 S.Ct. at 1080. Because of the absolute right and significant interest for having the first jury decide the case for the defendant, the Double Jeopardy Clause protects defendants from prosecutorial misconduct which results in a mistrial. *Id.*

In *Oregon v. Kennedy,* 456 U.S. 667, 675–676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982), the Court re-examined *Dinitz,* holding, "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." Consequently, when the mistrial was granted as a result of prosecutorial misconduct intended to goad the defendant into seeking a mistrial, retrial is barred under the Fifth Amendment.

However, the Texas Constitution provides protections greater than *Kennedy. Bauder v. State,* 921 S.W.2d 696 (Tex.Cr.App.1996). The *Bauder* Court held, "a successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware of but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." *Id.,* at 699. The *Kennedy* Court required an understanding of the scienter of the prosecution, while the *Bauder* Court held conduct which recklessly results in a mistrial will bar retrial. In other words, under the Texas Constitution, there is no distinction between intentionally and recklessly forcing a defendant to request a mistrial.

The issue in this case is whether the Double Jeopardy Clause of the Texas Constitu-

---

1. All emphasis supplied unless otherwise indicated.

tion bars retrial following the erroneous denial of a mistrial based upon prosecutorial misconduct.[2]

## II.

### Other Jurisdictions

#### A.

#### State

In *Pennsylvania v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), the Pennsylvania Supreme Court held under the Pennsylvania Constitution, prosecutorial misconduct directed at securing a conviction is a possible double jeopardy bar to retrial. In *Smith*, the prosecution withheld potentially exculpatory physical evidence and denied the existence of an agreement with the State's chief witness, whereby the witness would receive favorable sentencing treatment for testifying against Smith. *Id.*, 615 A.2d at 322. The reasoning of the Court rested on the egregiousness and bad faith on the part of the prosecution which "violate[d] all principles of justice and fairness embodied in the Pennsylvania Constitution's double jeopardy clause." *Id.*, at 324. Citing their own case, the Court stated their standard:

> The United States Supreme Court has enunciated principally two types of prosecutorial overreaching. First there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. In contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and cannot be condoned. *It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against.*

*Id.*, at 324 (citing *Commonwealth v. Starks*, 490 Pa. 336, 341, 416 A.2d 498, 500 (1980)).

The reasoned holding of the Court was "the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, *but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.*" *Id.*, at 325.

In New Mexico, the Supreme Court has adopted a test which is not dependent upon when the prosecutorial misconduct is discovered. Their test is "when a defendant moves for mistrial, retrial, or reversal because of prosecutorial misconduct, retrial is barred under Article II, Section 15 of the New Mexico Constitution, when improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for new trial, and if the official knows that the conduct is improper and prejudicial, and if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial or reversal." *New Mexico v. Breit*, 122 N.M. 655, 930 P.2d 792, 803 (1996). In coming to this decision, the *Breit* Court relied upon the memorandum decision of the trial court. The prosecutor made several egregious remarks during the trial and the trial court granted Breit's motion to dismiss further prosecution upon double jeopardy grounds. The trial judge discussed the role of the prosecution by quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with

---

**2.** The concurring opinion argues adoption of this opinion would create a "broad rule" that would jeopardy bar *all* cases where the conviction was reversed as a result of prosecutorial misconduct. *Ante*, at 15 (McCormick, P.J., concurring). This is not true. This opinion is *limited* to the issue presented, namely whether art. I, § 14 of the Texas Constitution bars retrial when the trial judge *erroneously denies a mistrial based on prosecutorial misconduct.*

earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. *It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.*

*Breit,* 930 P.2d at 807.[3]

In Connecticut, the Superior Court established the following test to determine whether retrial was barred. The defendant must prove "the state engaged in prosecutorial misconduct 'undertaken with the deliberate purpose of depriving the defendant of double jeopardy's shield, that is to say, only a high-handed wrong intentionally directed against the defendant's constitutional right will trigger his right not to be twice put in jeopardy for the same offense.' " *Connecticut v. Colton,* 1997 WL 219996, at *1 (Conn.Super.Ct.1997) (citing *Colton II,* 663 A.2d at 339). The Court stated the defendant must also prove that "the misconduct of the prosecutor is undertaken not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Id.* The rationale of the court emphasized few cases would meet the standard, however they held:

> We can see no principled justification for a distinction between prosecutorial misconduct that is clandestine, and therefore not discoverable until after a verdict or on appeal, and prosecutorial misconduct that is visible, and so can be remedied by a motion for mistrial or on direct appeal.

*Connecticut v. Colton (Colton II ),* 234 Conn. 683, 663 A.2d 339, 347 (1995).

In Nevada, the Court ruled double jeopardy would bar retrial in "cases in which the motion for retrial was denied and the judgment was subsequently reversed because of the prosecutorial misconduct which precipitated the motion for mistrial." *Collier v.*

*Nevada,* 103 Nev. 563, 747 P.2d 225, 226 (1987).

### B.

### Federal

The Fifth Circuit considered the implication of retrial after reversal based upon prosecutorial misconduct. *Robinson v. Wade,* 686 F.2d 298, 307 (5th Cir.1982). The Court discussed the "unjustness of ... preclusive effect simply by the point in the judicial process at which a charge of overreaching is found meritorious." *Id.,* 686 F.2d at 307. The Court went on to make a distinction between the holding in *Burks, supra,* and the problem with prosecutorial misconduct:

> Nor is the rationale of *Burks* inconsistent with application of the "prosecutorial overreaching" exception to bar retrial where the overreaching caused a tainted verdict to be set aside, rather than a tainted proceeding to be aborted. *Burks'* holding, resting on a perceived dichotomy between reversals for evidentiary insufficiency, indicated that, as the former hold no implication for the guilt or innocence of the defendant, they would raise no bar to future prosecution. *Burks,* 437 U.S. at 14–15, 98 S.Ct. at 2149. That distinction does not necessarily hold true where trial error is attributable to intentional prosecutorial overreaching. The extreme tactics which constitute prosecutorial overreaching offend the double jeopardy clause at least in part because they unfairly deprive the defendant of possible acquittal, by heightening, in a manner condemned by law, the jury's perception of the defendant's guilt.... *Whether the tactic condemned is successful in its objective of securing a mistrial, or unsuccessful, but causes the return of a verdict of conviction, would seem to be of little significance in development of a law of preclusion designed to protect this interest.*

---

**3.** The majority states the prosecutorial misconduct in the case *sub judice,* "while significant, is by no means comparable to that which took place in *Breit.*" *Ante,* at 14 n. 5. I disagree. While the prosecution in *Breit* made numerous egregious remarks throughout the trial, appellant

has suffered from a lying district attorney, forced perjury, false physical evidence and destruction of exculpating evidence. It is far easier to defend against open assault than covert falsehoods and manipulations.

*Robinson*, 686 F.2d· at 308.[4]

In dicta, the Second Circuit has suggested the Double Jeopardy Clause would bar retrial if the prosecutorial misconduct was undertaken with the intent of preventing an acquittal the prosecutor reasonably believed, at that time, was likely absent such misconduct. *United States v. Wallach*, 979 F.2d 912, 916 (2nd Cir.1992). Their rationale compellingly argued for an extension of *Kennedy:*

> ... If jeopardy bars a retrial where a prosecutor commits an act of misconduct with the intention of provoking a mistrial motion by the defendant, there is a plausible argument that the same result should obtain where he does so with the intent to avoid an acquittal he then believes is likely. The prosecutor who acts with the intention of goading the defendant into making a mistrial motion presumably does so because he believes that completion of the trial will likely result in an acquittal. That aspect of the *Kennedy* rationale suggests precluding retrial where a prosecutor apprehends an acquittal and, instead of pro-voking a mistrial, avoids the acquittal by an act of deliberate misconduct. Indeed, if *Kennedy* is not extended to this limited degree, *a prosecutor apprehending an acquittal encounters the jeopardy bar to retrial when he engages in misconduct of sufficient visibility to precipitate a mistrial motion, but not when he fends off the anticipated acquittal by misconduct of which the defendant is unaware until after the verdict. There is no justification for that distinction.*

*Id.*, at 916.[5]

In *United States v. Rios*, 637 F.2d 728, 729 (10th Cir.1980), the Court held "that double jeopardy considerations applicable after a mistrial has been granted are indeed applicable in the same manner when prosecutorial misconduct requires reversal of a conviction for lack of a fair trial after a mistrial motion has been denied." The Court denied Rios' appeal, however, because the Court ruled the prosecution did not intend to provoke the defense into seeking a mistrial. Again, the scienter of the prosecution was seen as para-

---

4. In an earlier opinion, the Fifth Circuit considered the issue of barring retrial after reversal for prosecutorial misconduct and determined, "[t]he argument has some support in logic." *United States v. Opager*, 616 F.2d 231, 235 (5th Cir. 1980). However, the *Opager* Court ultimately determined no prosecutorial misconduct had occurred, so the issue was left for another day. An interesting footnote by Judge Gewin stated: "In sum, *Burks* may be read to not completely foreclose the application of the double jeopardy clause to cases in which reversal after conviction has been obtained where *Kessler* type bad faith overreaching exists." *Id.*, at 236, n. 13.

In *United States v. Kessler*, 530 F.2d 1246 (5th Cir.1976), the Court:

> found that intentional misconduct by the government in presenting false evidence to the court seriously prejudiced the defendant and held that "such intentional misconduct is 'prosecutorial overreaching' and is one of the 'types of oppressive practices at which the double jeopardy prohibition is aimed.'"

*Opager*, 616 F.2d at 234 (citing *Kessler*, 530 F.2d at 1257–58, quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)).

The Fifth Circuit also made a distinction between "prosecutorial misconduct" and "bad faith prosecutorial overreaching," preferring the overreaching phrase as connotative of the bad intent of the prosecution versus merely unintentional misconduct. *Id.*, at 236, n. 13. In this Court we have simultaneously used both terms with no distinction in their meaning. *See, Penry v. State*, 903 S.W.2d 715 (Tex.Cr.App.1995); *Higginbotham v. State*, 807 S.W.2d 732 (Tex.Cr.App.1991); *State v. Yount*, 853 S.W.2d 6 (Tex.Cr.App.1993); *State v. Frye*, 897 S.W.2d 324 (Tex.Cr.App.1995); *Cook v. State*, 940 S.W.2d 623 (Tex.Cr.App.1996); and *Bauder v. State, supra.*

5. The majority has referred to *United States v. Oseni*, 996 F.2d 186 (7th Cir.1993), ante, at 12 n. 3, for the proposition that the 7th Circuit has "specifically rejected the Second Circuit's holding in *Wallach*." The majority also cites *United States v. Doyle*, 121 F.3d 1078 (7th Cir.1997), regarding the bar to retrial after reversal for insufficient evidence. *Ante*, at 11. However, in *Doyle*, the 7th Circuit made specific comments regarding their holding in *Oseni* which the majority has failed to acknowledge:

> ... First, our case law impliedly suggests that this Circuit does not subscribe a *Wallach*-type extension of *Kennedy*. See *United States v. Oseni*, 996 F.2d 186, 187–88 (7th Cir.1993). Second, although today *we do not decide whether we would adopt the Wallach exception* under other circumstances, Doyle does not, nor can he, show how he could meet the *Kennedy* or the *Wallach* exception to the traditional double jeopardy analysis, even if either case were to apply ... *We expressly reserve the question of whether Wallach would apply in other circumstances..*

*Doyle*, at 1085, 1087.

mount in determining whether or not jeopardy bars retrial. In dissent, Judge McKay vehemently argued against this scienter standard, stating, "[t]o suggest that the double jeopardy clause is not violated unless the defendant can show (presumably only through the prosecutor's confession) that the subjective purpose of the prosecutor was to obtain a mistrial invites the prosecution to go as far as it wishes, knowing that the only sanction it faces is a new trial." *Id.*, at 731.

The Third Circuit expressly held double jeopardy would bar retrial upon reversal for prosecutorial misconduct, however, only in very narrow circumstances. *United States v. Curtis*, 683 F.2d 769, 776 (3rd Cir.1982). In reaching their decision, the *Curtis* Court discussed Justice Stevens' concurrence in *Kennedy* and his obvious problem with allowing retrial after appellate reversal:

> ... Justice Stevens, who was joined by three other Justices, also observed that the plurality's reasoning was "premised on the assumption that an appellate court that concluded not only that the defendant's mistrial motion should have been granted but also that the prosecutor intended to provoke a mistrial would not be obligated to bar reprosecution as well as reverse the conviction." Justice Stevens termed such an assumption "irrational."

*Curtis*, 683 F.2d at 774 (citing *Kennedy*, 456 U.S. at 687, n. 22, 102 S.Ct. at 2095, n. 22). Even in consideration of *Burks*' "apparently preclusive language," *Curtis*, 683 F.2d at 776, the Court held "the double jeopardy clause should not be read to forbid a retrial following an appellate reversal for prosecutorial misconduct if a retrial would be barred." *Ibid.*

In *United States v. Singer*, 785 F.2d 228, 240 (1986), the Eighth Circuit, in a case of first impression, discussed at length the double jeopardy issue in a case they ultimately determined did not implicate jeopardy concerns. However unwilling the Court was to address the issue of whether jeopardy barred

retrial after reversal for appellate misconduct, in dicta, they discussed their rationale:

> There is good reason to argue that a criminal defendant whose conviction over a timely motion for mistrial is reversed because of any sort of governmental misconduct should be placed on equal footing with a defendant whose motion was properly granted. The defendant obtains mistrial only if the trial judge apprehends the sufficiently prejudicial misconduct. In reversing, the appellate court simply corrects the trial court's error. *The right of a criminal defendant not to be twice placed in jeopardy should not hang on which court correctly determines that misconduct infected the trial.*

*Id.*, at 239.[6]

### III.

### Facts

The State sought the death penalty in this case. Appellant was convicted of capital murder and ultimately sentenced to life in prison. His conviction was reversed by the Court of Appeals and a new trial was ordered. *Davis v. State (Davis I)*, 831 S.W.2d 426 (Tex.App.—Austin 1992). Appellant filed a pretrial writ of habeas corpus alleging retrial was barred by the Double Jeopardy Clause of the Texas Constitution. Relief was denied by the trial court and the Court of Appeals. *Ex parte Davis (Davis II)*, 893 S.W.2d 252 (Tex.App.—Austin 1995). We granted review to determine whether art. I, § 14 of the Texas Constitution bars retrial following the erroneous denial of a motion for mistrial based on prosecutorial misconduct.

The majority opinion has laid out the relevant facts. Important are the habeas court's findings of fact and conclusions of law regarding the actions of Bill Reimer, the Comal County District Attorney. The court's findings were:

1. Bill Reimer is the elected district attorney of Comal County, Texas.

---

6. The concurring opinion refers to the cases discussed in this section as representing a "mostly unprecedented rule." *Ante* at 15 (McCormick, P.J. concurring). However, to support that position, the concurring judge cites only his dissent-

ing opinion in *Bauder v. State*, 921 S.W.2d 696, 703 (Tex.Cr.App.1996) (McCormick, P. J., dissenting), which garnered only one vote, his own and, therefore, is void of any precedential value.

2. Reimer, acting in his official capacity as district attorney of Comal County, personally prosecuted Applicant at his first trial.

3. Reimer has disqualified himself from further prosecution in this cause and Ray Taylor has been named special district attorney to prosecute Applicant and Taylor is completely independent of the Comal County District Attorney's Office.

4. *The Court of Appeals has found that Reimer engaged in prosecutorial misconduct and suborned perjury. That finding is binding upon this Court and is accepted herein and that finding serves as a basis for this Court's conclusions of law.* See generally, *Davis v. State*, 831 S.W.2d 426 (Tex.App.—Austin 1992, pet. ref'd).

5. Reimer presented the following facts to the jury in Applicant's trial:

a. Certain evidence was not tested because of the cost to Comal County. This statement was incorrect because Comal County only paid for Zain's testimony.

b. That the police investigation was excellently conducted and outstanding while before the trial he wrote New Braunfels city officials complaining of the lost evidence and negligence of the police investigation.

These findings, while accurate, do not fully state the scope of egregious misconduct committed by Reimer.

In suborning perjury, Reimer coerced and threatened Carolyn Toth, *a witness for the State.* Toth testified she saw appellant and the victim's sister exchange an embrace after the body was discovered. *Davis I*, 831 S.W.2d at 435. Reimer, feeling this testimony damaged the State's case, ordered a police officer to contact Toth. *Id.*, at 436. Toth ultimately arrived at the district attorney's office and was told by Reimer there was a conflict between her testimony and that of other witnesses. Reimer told Toth:

. . . that if he could not resolve this conflict he would present the matter to the grand jury; and that if the officers had lied, he would indict the officers, or "the reverse if she had not told the truth." He also told

her that he had "already put one person in jail for lying on the stand last year." He said he then asked her if she might have been mistaken about having seen a completed embrace. She said she had been mistaken.

*Id.* Reimer also directed Toth to testify that *she* had called him about changing her testimony. *Id.*, at 437. The next day, Toth was again called to the stand where she changed her testimony to conform with Reimer's mandate. *Id.*, at 436. When crossexamined, Toth denied being coerced to change her testimony. *Id.*

After Toth was recalled as a witness, but before the end of the trial, the defense learned Reimer had threatened Toth with a grand jury indictment for perjury. At that point, the defense moved for a mistrial on the ground of prosecutorial misconduct. *Id.* The trial judge conducted a hearing outside the presence of the jury. *Id.* Toth was given immunity and testified she had only changed her testimony because of Reimer's threats. *Id.*, at 436. She further testified the district attorney's manner frightened and intimidated her and she feared going to jail unless she changed her testimony. *Id.* On crossexamination by the State, Toth testified she was fearful when Reimer showed up where she lived and thoroughly frightened by a police officer who attempted to get her to "ride into the country with him." *Id.* After this hearing, the trial judge concluded "that there had not been prosecutorial misconduct that would justify a mistrial." *Id.*, at 437. The trial judge instructed the jury to ignore Toth's second round of testimony. *Id.*

The appellate court summarized the damage to the credibility of Toth: "In light of Toth's changing stories, we think it likely that the court's instruction to ignore *part* of her testimony had the effect of convincing at least some jurors that she was simply not a credible witness and that *all* of her testimony should be ignored." *Id.*, at 439 (emphasis in original).

Equally outrageous is the conduct of the State's forensics expert, Fred Zain. The unreliability of Zain's expertise was not made known until after the reversal. Although

Zain invoked his Fifth Amendment privilege against self-incrimination at the hearing on appellant's pretrial writ of habeas corpus, the habeas judge made the following pertinent findings of fact:

1. Fred Zain was an employee of the Bexar County Forensic Science Center who testified for the State in Applicant's trial.

2. Comal County paid the Bexar County Medical Examiner for Zain's services as an expert witness and not for the performance of any scientific testing of evidence in Applicant's trial.

3. Zain testified at the trial that he performed the scientific tests on blood and other evidence in connection with this case.

4. Zain did in fact *not* conduct the DNA tests noted in his report.

5. It is highly probable that *Zain committed aggravated perjury* in testifying at Applicant's trial concerning the results of some or all of the scientific tests he said he conducted. Specifically, *Zain committed aggravated perjury* in the following ways:

   a. He testified that he had personally conducted scientific tests when in fact he did not.

   b. He testified that certain pieces of physical evidence contained Applicant's blood when in fact he knew or should have known that these pieces of evidence did not contain Applicant's blood.

6. Zain is not credible under oath.

7. At the hearing on Applicant's application for writ of habeas corpus, Zain invoked his right against self incrimination as guaranteed by the Fifth Amendment after being admonished of his rights by the trial court and after admitting that his employment had been terminated because of evidence in his possession being lost.

8. Zain's *scientific evidence was not reliable.*

9. Zain's reports and testimony served as the basis for the opinions, testimony and conclusions of Lt. Ed Richards.

10. The State's theory of prosecution was premised on the testimony of Lt. Richards and Zain. Zain misled Lt. Richards regarding the forensic facts, thus causing Lt. Richards' testimony and conclusions to be probably inaccurate.

11. *Zain was employed by the Comal County District Attorney to conduct the serology testing of the evidence in this case.*

12. Zain's *conduct was intentional and outrageous and shocked the conscience of the court.*

13. The Court is familiar with the holdings of the West Virginia Supreme Court in *The Matter of the West Virginia State Police State Police Crime Laboratory Serology Division*, No. 93–Misc.–402 [190 W.Va. 321, 438 S.E.2d 501] (W.Va. Nov. 10, 1993) (not yet reported). The Court agrees with the general factfindings of the West Virginia Supreme Court concerning Zain's competence, abilities and reliability and finds that there is a significant danger that similar conduct occurred in Texas.

14. Zain was terminated from the Bexar County Forensic Science Center for mishandling of evidence and because of the result of Dr. Stone's audit.

*Davis II*, 893 S.W.2d at 258–259. Again, the findings do not fully represent the extent of the misconduct.

Zain testified that appellant's blood was on physical evidence when it was not. There were no eyewitnesses to this crime, therefore Zain's testimony was critical to the State's case. And, it was based entirely on lies. Beyond Zain's obviously perjured testimony, there were other irregularities with the evidence. Crucial hair evidence was lost, a crucial tape perhaps exculpating appellant was erased by the New Braunfels police and blood samples were improperly stored. *Id.*, at 259.

The Court of Appeals determined the actions of Reimer denied appellant a fair trial and violated appellant's due process rights. *Davis I*, 831 S.W.2d at 439. In sum, perjured testimony was presented at the behest of Reimer. *Id.*, at 438. The scientific evidence presented at trial was completely un-

reliable. *Davis II*, 893 S.W.2d at 258. Possible exculpatory evidence was destroyed by the police. *Davis I*, 831 S.W.2d at 442. It is almost incomprehensible the lengths Comal County went to in order to convict appellant. And the State readily *admits* intentionally committing misconduct in their attempt to convict appellant. The State actively deprived appellant of his opportunity for a fair trial.

After Reimer coerced Toth to change her testimony, appellant moved for a mistrial. The trial court ruled the prosecutorial misconduct did not justify a mistrial. That decision was reversed by the Court of Appeals. *Id.*, 831 S.W.2d at 439–440. The trial judge's erroneous decision was reversed.[7]

## IV.

### Analysis

The majority follows the lead of the Court of Appeals in holding the Texas Constitution does not prevent retrial after reversal for prosecutorial misconduct. *Ante*, at 14. In reaching this holding the majority states: "Appellant has not directed us to any cases, however, where the Supreme Court has explicitly extended *Oregon v. Kennedy* to apply

to instances where verdicts of guilty have been reversed on appeal due to prosecutorial misconduct, and therefore holding retrials as jeopardy barred." *Ante*, at 12.[8] In other words, because appellant cannot cite a case directly on point, he loses. That type of rationale is devoid of reason and reflects poorly on any court of last resort.

The majority fails to recognize the jurisdictions that have extended *Kennedy* did not have a Supreme Court opinion on point to *justify* their extension. What those jurisdictions did have was a grasp of the problems inherent in not extending *Kennedy*. For example, the Pennsylvania Supreme Court correctly recognized that this type of prosecutorial misconduct was not an inevitable part of the trial process, but was instead a breakdown of the integrity of the judicial proceeding that the double jeopardy clause was designed to protect against. *Smith*, 615 A.2d at 324. And, the Fifth Circuit has noted that "extreme tactics which constitute prosecutorial overreaching offend the double jeopardy clause." *Robinson*, 686 F.2d at 308.

Moreover, this Court did not have a case directly on point when it decided *Bauder*, and held the harm incurred when the prose-

---

7. The concurring opinion states the prosecutorial misconduct may not be "easily defined," *ante*, at 16 (McCormick, P. J., concurring), I pause to note that every judge who has been involved with this case has not only easily recognized the misconduct but openly condemned the misconduct.

8. The majority also states that it is not clear the State knew or should have known Zain' testimony was false. *Ante*, at 12. This statement is incorrect for at least two reasons. First, there is evidence Reimer knew Zain had not conducted any of the DNA tests which he testified about. *Davis II*, 893 S.W.2d at 259. Second, even if Reimer did not know the testimony was false, Reimer had imputed knowledge of the falsity because Zain was the State's forensic expert and, therefore, a part of the prosecutorial team. In *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), the Supreme Court held in certain circumstances, knowledge of perjured testimony may be imputed to the prosecutor who lacks actual knowledge of the falsity. In *Ex parte Adams*, 768 S.W.2d 281, 292 (Tex.Cr.App.1989), the Court "declined to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel." As

such, Reimer was responsible for Zain's conduct. *See also, Ex parte Castellano*, 863 S.W.2d 476 (Tex.Cr.App.1993) (Off duty peace officer who was not assigned to an arson case but took it upon himself to assist and engage in perjury was a part of the prosecutorial team.). Under this rationale the State is responsible for the evidence in its case. In *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Supreme Court held:

... This in turn means that *the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf* in the case ... Unless, indeed, the adversary system of prosecution is to descend to a gladiatorial level unmitigated by any prosecutorial obligation for the sake of truth, the government simply cannot avoid responsibility for knowing when the suppression of evidence has come to portend such an effect on a trial's outcome as to destroy confidence in its result.

*Id.*, at 437–439, 115 S.Ct. at 1567–1568. *See also, Zule v. State*, 802 S.W.2d 28, 33 (Tex.App.—Corpus Christi 1990) (The State is responsible for disclosing favorable evidence known by its agents, including police officers, even if the particular evidence is not known to the prosecuting attorney.).

cution engages in misconduct to deprive a defendant of a fair trial, is the type of harm art. I, § 14 is meant to protect against. And, when this occurs, the prosecution should bear the responsibility for denying the defendant a fair trial:

> ... Under such circumstances, mistrial is not a necessary concession to the exigencies of trial, nor the unavoidable consequences of events beyond the prosecutor's control, but an immediate result of conditions produced by the government's representative which force upon a defendant the expense and embarrassment of another trial unless he is willing to accept an incurable unfair one. *When this happens, we think the government should bear the responsibility for denying the defendant his right, secured by the Texas Double Jeopardy Clause, to be tried in a single proceeding by the jury first selected.*

*Bauder,* 921 S.W.2d at 699.

The Double Jeopardy Clause has evolved from its simplest understanding to the cases discussed here in section II., *supra.* The protections for the defendant are based on fundamental principles of fairness; to protect against the power of the state and not subject any individual to repeated attempts at conviction causing undue burden, expense and anxiety. *Burks v. United States* held a defendant could not be retried if an appellate court held there was insufficient evidence, because the State had previously "been given one fair opportunity to offer whatever proof it could assemble." *Burks,* 437 U.S. at 16, 98 S.Ct. at 2149–2150.

In the instant case, the prosecution had their day in court. On that day, the prosecutor stood before twelve jurors and represented every individual in this State, and was given the opportunity to offer whatever proof could be assembled. The State chose not to be fair, but to engage in egregious miscon-

duct. Had the trial judge correctly granted a mistrial, further prosecution would have been jeopardy barred. *Bauder v. State, supra.*

However, the majority holds there is no double jeopardy violation because there was not a mistrial, only a reversal. But, there is no rationale for this type of distinction. *United States v. Wallach,* 979 F.2d at 916; *and, Connecticut v. Colton,* 663 A.2d at 347. If the requested mistrial was erroneously denied and that error is found on appeal, why should the defendant be subjected to retrial? Why should a defendant, due to an *incorrect* ruling by the trial judge, lose this constitutional protection? It is simply inconceivable that the valuable double jeopardy protections suddenly vanish when the case enters the appellate process.[9] The right of a defendant to be free from double jeopardy should not be determined by which court *correctly* determines that misconduct infected the trial. *See, Singer,* 785 F.2d at 239. A constitutional *guarantee* should not morph into a "nonright" depending upon the point in the judicial process an individual finds himself. The trial judge, through an erroneous ruling, should not be allowed to forfeit an individual's valuable constitutional right. Accordingly, I would hold art. I, § 14 of the Texas Constitution bars retrial following the erroneous denial of a motion for mistrial based on prosecutorial misconduct.

### Conclusion

"The genius of the Constitution resides not in any static meaning that it had in a world that is dead and gone, but in its adaptability to interpretations of its greatest principles that cope with current problems and current needs." William J. Brennan, *Constitutional Adjudication,* 40 Notre Dame Law, 559, 568 (1965).[10] The guarantees inherent in our

---

9. *See, Stone v. Powell,* 428 U.S. 465, 511, 96 S.Ct. 3037, 3060, 49 L.Ed.2d 1067 (1976) (Brennan, J., dissenting).

10. Judge McCormick spends a large portion of his concurrence in an *ad hominem* attack on Justice Brennan who died less than two months ago. Rather than respond in kind, I refer the reader to the comments of Chief Justice Rehnquist upon Justice Brennan's retirement:

> The enduring legacy of Justice Brennan—the high value which he placed on claims of individual constitutional rights asserted against the authority of majoritarian self-government—is in no danger of being forgotten or disregarded simply because he has left the bench.
>
> Future historians and jurists may disagree as to Justice Brennan's legacy, but foremost he was

Constitution mirror what we as a society respect and revere, and what we live and die for. What we refuse to tolerate oftentimes speaks volumes more about our government's concept of freedom and ordered liberty than what we accept.

The State openly admits it engaged in egregious misconduct in order to convict appellant. (State's brief pp. 13, 18.) This misconduct shakes the very foundation upon which our system of justice rests. I would expect condemnation from every member of this Court. Instead, the majority refers to "reprehensible" actions by the prosecutor, *Ante*, at 13, but blindly affirms the judgment of the Court of Appeals. To hold the Double Jeopardy Clause is *not* violated when the State intentionally commits prosecutorial misconduct invites the prosecution to go as far as it wishes, knowing the only sanction it faces is a new trial—a second bite at the apple. *See, Rios*, 637 F.2d at 731 (McKay, J., dissenting). But, affording the State a second opportunity to convict under these circumstances is *exactly* what the Fifth Amendment is supposed to protect against. Moreover, the retrial sanction begs the question: if in the first instance the State was willing to commit misconduct in order to improperly convict, why would the State stray from that path a second time?

Believing appellant's retrial is jeopardy barred under art. I, § 14 of the Texas Constitution, I would reverse the judgment of the Court of Appeals. Because the majority does not, I dissent.

a man who served this country admirably for    many years.