**John Michael CRAWFORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 67062.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 29, 1986.

William R. Vance, Bryan, for appellant.

Travis B. Bryan, III, Dist. Atty. and Jim W. James, III, Asst. Dist. Atty., Bryan, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

A jury convicted appellant of aggravated rape and assessed punishment at confinement for 90 years.

In two of his nine grounds of error, appellant challenges certain aspects of the competency hearing which was conducted prior to trial. We will discuss these contentions first.

Appellant contends that the trial court should not have permitted Dr. John Kinross-Wright to testify on the issue of competency because the court's order appointing Kinross-Wright was not proper in two ways. First, the order stated only the first part of the competency standard under Art. 46.02, Sec. 1(a), V.A.C.C.P., namely: "A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding of the proceedings against him." The order did not include the second part of the standard that declares, "a person is incompetent to stand trial if he does not have ... a rational as well as factual understanding of the proceedings against him."

Appellant also alleges that the order contains a second deficiency in that it does not state the facts and circumstances of the offense. See Art. 46.02, Sec. 3(c), V.A.C.C.P.

■ Initially, we note that Art. 46.02 does not require that an order contain either of the items of which appellant complains. As long as the examiner is advised, in some manner (not necessarily in the order), of the facts and circumstances of the case, and is aware of and can testify that

appellant is or is not competent to stand trial under the aforementioned standard, the examiner can testify.

■ More important, however, is the fact that an "error" in the order does not affect the competency of the expert to testify. If the expert is qualified to testify to competency in that he possesses the expert qualifications that legally entitle him to give opinion evidence, *Parker v. State*, 594 S.W.2d 419 (Tex.Cr.App.1980), then the fact that the order is incorrect is harmless error at best. Accordingly, although we do not think the order is deficient, we overrule appellant's contention because such alleged deficiency *in the order* does not bar the testimony of Kinross-Wright.[1]

In his second ground of error, appellant challenges the sufficiency of the evidence to support the jury's verdict finding him competent to stand trial. Appellant claims the evidence is insufficient because Kinross-Wright's testimony should have been excluded, and without his testimony there is no other evidence of competency.

Dr. Barney M. Davis, Jr., a psychiatrist, was appointed by the court on September 21, 1979, to examine appellant regarding his competency to stand trial and his sanity at the time of the offense. Davis testified at the competency hearing that, in his opinion, appellant was schizophrenic, mildly retarded, unable to understand all that was happening to him, and incompetent to stand trial.

Both of appellant's court-appointed attorneys testified that they were unable to communicate with appellant about his case and that appellant did not have sufficient present ability to consult with them with a reasonable degree of rational understanding. They said that appellant did not have a rational or factual understanding of the proceedings against him.

Mary Fox, a special education administrator for the Bryan Independent School District, testified that school records

---

1. If appellant had objected on the grounds that Kinross-Wright was incompetent to testify because he did not know the standard or was not qualified for some other reason, a different question would be presented. See *Parker,* supra at 423.

showed that appellant had repeated the first and second grades, that he had great difficulty with academic subjects, and that his IQ had been measured at 80 in the fourth grade and at 59 in the sixth grade.[2] Appellant dropped out of school in the seventh grade.

Dr. Tom Edwards testified that he was a psychologist and had been the director of psychological services at Bluebonnet Psychiatric Center. Edwards said that he supervised the counselor to whom appellant had spoken when he came in for treatment and that he was present when the counselor interviewed appellant. Edwards thought appellant was a schizophrenic.

Kinross-Wright and Steve Rodriquez testified for the State. Kinross-Wright said that he had examined appellant, but had not received any information about the nature of appellant's alleged offense. Kinross-Wright testified that, in his opinion, appellant had the ability to understand what rape was and to understand his legal rights if they were explained in concrete terms. He stated that appellant had sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and that he was competent to stand trial.

Because Kinross-Wright was not informed of the facts and circumstances of the offense, the court sustained appellant's objection to Kinross-Wright's testimony that appellant had a rational as well as factual understanding of the proceedings against him. The court instructed the jury to disregard the witness's answer. Appellant's motion for mistrial was overruled.

Steve Rodriquez was a jailer at the Brazos County jail and had spoken with appellant on several occasions. He said appellant was able to communicate ideas and concepts. Rodriquez testified that appellant had the ability to consult with his attorney and had a factual understanding of what was going on in the proceedings

against him. Although Rodriquez said he had never discussed the particular offense for which appellant was on trial, he also said he and appellant talked generally about his trial, that appellant always asked him questions about it, and that appellant had a factual understanding of the proceedings.

■ The State's evidence, through the testimony of Kinross-Wright and Rodriquez, demonstrated that appellant was competent to stand trial under Art. 46.02, Sec. 1, as the jury so found. The ground of error is overruled.

In his third ground of error appellant contends that the trial court erred in overruling his motion to dismiss the instant case for violation of the Texas Speedy Trial Act, Art. 32A.02, V.A.C.C.P. The record of the hearing on the motion to dismiss reflects that appellant was arrested on April 24, 1979, and indicted on April 26, 1979.[3] The original indictment was quashed on July 3, and a new indictment was filed on July 19. At the hearing, the prosecutor testified that the State had been ready for trial on July 3, but that the indictment had been quashed. He said that since the refiling on July 19, the State had been ready for trial.

The case was rescheduled in August because the court granted appellant's motion for the appointment of a psychiatrist. Appellant was examined by several psychiatrists and a competency hearing was held on January 7, 1980.

The court overruled appellant's motion to dismiss. At a pretrial hearing held on February 8, 1980, appellant argued an amended motion to dismiss. Appellant does not take issue with the court's ruling as to the first motion. Rather, he contends that the trial court erred in overruling his amended motion to dismiss. He contends that the court should add the days following the competency hearing up to the date of the

2. Apparently, during the IQ test in the sixth grade, appellant got angry and finished only half of the test. This could account for the lower score.

3. During the trial there was testimony that appellant had been arrested April 8. However, even if this is the date of arrest, the State's announcement of ready was timely.

hearing to dismiss, January 8—February 8, in calculating the 120 day limit of Art. 32A.02, Sec. 1(1). The addition of these days would exceed the 120 day limit.

At the February 8 hearing, the prosecutor testified that he had interviewed all of his. witnesses except three experts and one police officer, whom he also expected to call to testify. He reiterated that he had been ready for trial since July 3, 1979, and that the trial had been delayed due to the competency and pretrial hearings, but that he had still been ready.

■ The State's announcement of ready within the statutory time period establishes a prima facie case of compliance with the Texas Speedy Trial Act. The burden is then on the defendant to show that the State was not ready within the time limit. *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr. App.1979). The State's announcement of ready was well within the statutory time limits. Appellant did not show that the State was not ready within the time limit. The ground of error is overruled.

Appellant's next ground of error is a two part contention based on the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution. Appellant contends that the trial court erred in overruling his Plea of Former Jeopardy, which was filed and heard prior to the second trial in the instant case.

At the first trial, Elvin Walker, a police officer with the Bryan Police Department, testified about the facts and circumstances surrounding appellant's confession, which had previously been found to be voluntary. In the confession, appellant admitted that he entered the complainant's house, robbed and raped her at knifepoint, robbed the complainant's housemate, and tied her up with sheets. The confession was introduced into evidence and read to the jury.

The complainant testified that appellant robbed her housemate, and then robbed and raped her. She identified State's ex-

hibit no. 5 as the knife appellant used, and said that it was one of her kitchen knives. The knife was admitted into evidence.

The complainant's housemate testified to essentially the same facts as the complainant.

Officer James Lumpkin of the Bryan Police Department testified that he arrived at the complainant's house at about 12:51 a.m., on August 23, 1978, in response to a call reporting a possible disturbance. The complainant ran out of her house and the officer locked her in his police car and went inside the house. He found a knife lying on the bed and some strips of sheet lying on the floor. Lumpkin testified that he carved his initials into the knife and put it in the police property room, along with the strip of sheet. He identified State's exhibit no. 5 as the knife he had found at the house.

At this point appellant moved for a mistrial on the grounds of prosecutorial misconduct, alleging that the State had not complied with the discovery order by failing to inform appellant about the sheet. Outside the presence of the jury, the State called Officer Bill Casper, the officer in charge of evidence and property at the police station. Casper testified that the offense report stated that a knife and a gag used on the complainant's housemate were submitted to the property room shortly after August 23, 1978. He said that he did not know what had happened to the sheet. The prosecutor stated that he could not have shown the sheet to appellant because the police department did not have it and the State did not have it.

There was some discussion about a green tag which had been attached to the knife when it was exhibited in court the day before, and which was now missing. The tag apparently reflected who had checked the knife out of the property room.[4] The prosecutor stated that the tag had been on the knife and that he did not know where it

---

**4.** Since the prosecutor stated that he had checked the knife out to use at the trial, we do not see what the significance, if any, of the

green tag was. The knife was properly identified and offered into evidence, and appellant did not claim any chain of custody problems.

was. The court then granted appellant's motion for mistrial.

Appellant alleges that the first mistrial was granted due to the bad faith and intentional concealment of certain evidence by the prosecutor. However, the trial judge who granted the mistrial was the same judge who heard the plea of former jeopardy, and he specifically stated that there was no evidence of bad faith on the part of the prosecutor. Appellant lists five instances which he contends demonstrate this bad faith: The State did not give certain photographs to appellant which were within the scope of discovery; the prosecutor read the quashed indictment to the jury; the State did not provide appellant with a written statement made by the housemate; the State did not produce the sheet that had been put in the police property room; and the State did not produce the green property tag that had been attached to the knife.

The prosecutor disputes that any of the above listed acts were intentional, states that no harm or prejudice was caused by the actions of the State, and claims that the evidence does not show that he ever intended to provoke a mistrial.

The trial court found no evidence of bad faith conduct on the part of the prosecutor and found no evidence that the governmental actions intended to provoke mistrial requests.

■ Our review of the record indicates that the trial court acted properly in overruling appellant's special plea.[5] First, the photographs which appellant claims he did not see were photographs shown to the complainant at the police station, in an effort to determine who her assailant had been. These photographs included two photograph albums containing over two hundred pictures, none of which pictured the appellant, and eight individual photographs, one of which depicted appellant. The photographs were shown to defense counsel at the identification hearing and

the complainant testified that she identified appellant in a line-up and again at the hearing on the basis of her recollection of appellant as she saw him when he robbed and raped her.

■ The second area of alleged misconduct occurred when the prosecutor mistakenly read an indictment which had been quashed. The quashed indictment charged appellant with rape. The "good" re-indictment properly charged appellant with aggravated rape, whereas the original indictment had not included the phrase "to be imminently inflicted." We agree with the trial court that appellant was not harmed by the prosecutor's mistake.

■ Appellant alleges that the State failed to provide him with the housemate's written statement. The record is very clear that the housemate did not make a written statement, but only spoke with police. No error is shown.

■ The fourth alleged misconduct—failure to produce the sheet, is harmless error at best. Both witnesses, the complainant and her housemate, testified that appellant bound and gagged the housemate with a sheet he took from the bed. There was no dispute about that fact. The prosecutor stated that he had not known that the sheet was missing from the property room and that he had never intended to offer it into evidence. The evidence is clear that although the sheet was missing, neither the prosecutor nor the police knew why.

■ Appellant's last alleged instance of misconduct—the disappearance of the green tag that had been attached to the knife appears to be of little consequence. Appellant makes no claim of improper chain of custody as to the knife. Officer Lumpkin identified it by the initials he had carved into it and the complainant identified it. In addition, the knife had already been introduced into evidence and identified without mention of the tag. We do not see the significance of the green tag or its disappearance and there is no evidence

---

5. In reviewing the five instances listed by appellant, we note that aside from an abundance of caution, we see no reason why a mistrial was necessary at all.

that the disappearance was intentional or involved misconduct.

The general rule is that when the defendant moves for a mistrial, the Double Jeopardy Clause is no bar to retrial. See *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Recently, the Supreme Court clarified an exception to that rule. In *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982) the court held that "... the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."

The trial judge who granted appellant's motion for mistrial was the same judge who heard appellant's double jeopardy contention. He specifically found that there was no evidence "that governmental actions intended to provoke mistrial requests or bad faith conduct on the part of the Prosecutor." After reviewing the record we agree.

■ Because there was no evidence of intent to provoke appellant into moving for a mistrial, there was no fact issue to present to the jury, and the trial court correctly overruled both the plea of former jeopardy and appellant's request to submit the issue to the jury. *Fields v. State*, 627 S.W.2d 714 (Tex.Cr.App.1982); *Chvojka v. State*, 582 S.W.2d 828 (Tex.Cr.App.1979); cf. *Collins v. State*, 640 S.W.2d 288 (Tex. Cr.App.1982). The ground of error is overruled.

In his fifth ground of error appellant contends that the trial court erred in failing to grant his motion to quash the jury panel. Appellant alleges that the plan of electronic jury selections adopted by the Commissioners Court of Brazos County was not followed strictly by the Tax Assessor-Collector in preparing the list of prospective jurors.

Buddy Winn, the Tax Assessor-Collector for Brazos County, testified that he prepared the list of prospective jurors from the voter registration list. The list was put into a computer and, in accord with the plan set up by the commissioners, Winn would call up the last name of the first person on the preceding list and get a list of people for the next panel. Winn stated that entering any name on the voter registration list would generate the process of the selection in the computer, and that he had done that on occasion, rather than calling up the last name of the first person on the preceding list.

■ First, appellant does not contend or show that the altered procedure affected the randomness of the selection. Second, appellant does not show whether or not the jury panel in his case was selected according to the plan. Appellant has not shown any error. See Art. 44.24, V.A.C.C.P. The ground of error is overruled.

■ Appellant contends that his motion for mistrial should have been granted on the grounds that the State "arbitrarily exercised its peremptory challenges in such a manner as to exclude all persons of the Negro race from the jury." Appellant alleges that the State struck all blacks from the jury panel at the competency hearing, the first trial of the case, and the instant trial at issue. The State denied systematically excluding blacks, noted that whites were also struck, and even gave reasons for the exclusions of the blacks on the panel. Peremptory challenges may be exercised for any reason. Art. 35.14, V.A.C.C.P. To allege that the State exercised those challenges "arbitrarily" does not show error.

■ The State may make a peremptory challenge "on grounds normally thought irrelevant to legal proceedings or official action, namely the race, religion, nationality, occupation or affiliations of people summoned for jury duty." *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). If we consider appellant's contention as one complaining of the system-

atic exclusion of blacks from the jury, we find that he has failed to show such exclusion. The record showing strikes only from competency hearing and from the first and second trials of appellant does not support appellant's allegations that the State sought to systematically exclude blacks from juries. *Jason v. State*, 589 S.W.2d 447 (Tex.Cr.App.1979); *Chambers v. State*, 568 S.W.2d 313 (Tex.Cr.App.1978); *Ridley v. State*, 475 S.W.2d 769 (Tex.Cr. App.1972). The ground of error is overruled.

In his seventh ground of error appellant contends that his confession should not have been admitted because evidence showed that he did not have the mental capacity to voluntarily and intelligently waive his constitutional rights. The court held a hearing on appellant's motion to suppress the confession and found that appellant had the mental capacity to knowingly and intelligently waive his rights and that he did voluntarily, knowingly and intelligently waive his rights and make a confession. The confession was admitted into evidence.

At the hearing on appellant's motion to suppress the confession, the court took judicial notice of the testimony elicited at the previous competency hearing, over which he had presided. In addition, Detective Elvin Walker of the Bryan Police Department, Detective Ronnie Miller of the College Station Police Department, Michael Calliham, a justice of the peace in Brazos County, and Dr. Thomas Edwards, a psychologist testified.

Judge Calliham testified that on April 8, 1979, he informed appellant of his rights under Art. 15.17, V.A.C.C.P., and that he asked appellant if he understood the warnings and appellant said that he did.

Walker and Miller testified to the circumstances surrounding the taking of appellant's confession. Walker had known appellant for about ten years and said that he had never had any trouble communicating with him. He testified that he read appellant his rights, that appellant indicated he understood those rights and wished to make a statement. Appellant told Walker about the offense and Walker made notes and then typed the statement. He read it back to appellant, asked appellant to read it himself and initial the warnings given on the statement form. Appellant did so. Walker said appellant understood the warnings and said that the statement was true and correct.

Miller was present when appellant made his confession and he testified to substantially the same facts as Walker did. He also stated that appellant said he understood his rights and appeared to know what was going on.

Edwards testified that appellant's mental age was like that of a ten or twelve year old and that appellant was borderline for mental retardation and that in his opinion appellant would not understand terms used regarding waiver of his rights. Edwards admitted that he did not ask appellant if he understood or ask him what specific words he understood. Edwards said appellant had a poor understanding of the legal process.

■ The record reflects that Dr. Kinross-Wright characterized appellant as not mentally retarded and of "dull normal intelligence." Several witnesses, one of whom had known appellant for ten years and another for four years, testified that they had no trouble communicating with appellant and that appellant understood his rights as they were explained to him. In light of this evidence adduced and the trial court's findings, we cannot say that appellant's contention that he is mentally incapable of waiving his rights is correct. *Combs v. State*, 643 S.W.2d 709 (Tex.Cr.App.1982); *White v. State*, 591 S.W.2d 851 (Tex.Cr. App.1979); *Bell v. State*, 582 S.W.2d 800 (Tex.Cr.App.1979). The ground of error is overruled.

■ Appellant contends that the trial court erred in failing to make specific findings of fact and conclusions of law as to appellant's mental capacity. The trial court made and filed in the record findings of fact and found the confession to be

voluntary, found that appellant was properly warned of his rights several times, and found that he voluntarily, freely and intelligently waived those rights. The court also specifically found that appellant had the mental capability to knowingly and intelligently waive his rights. The ground of error is overruled.

In his last ground of error appellant contends that his requested charge at the punishment phase of trial should have been included. Appellant requested the court to include an instruction advising the jury of the "entire range of facts which may result in a conviction for aggravated rape" so that he could properly argue the range of punishment to the jury. See former V.T.C.A. Penal Code, Sec. 21.03. Appellant did argue the other provisions of Sec. 21.03, telling the jury to keep in mind a sort of comparative range of punishment because, i.e., causing serious bodily injury also falls in the same punishment range as appellant's offense—threatening serious bodily injury.

The State responds that since appellant had already been convicted of the offense based upon the facts shown at the guilt-innocence phase of trial, he was not entitled to a charge on other ways possible to commit the offense that were not involved in the offense.

The Legislature determined that in punishing a person for aggravated rape, threatening serious bodily injury should be measured as severely as causing serious bodily injury. Thus, the punishment range for each was the same. No comparative scheme was included. Appellant is not entitled to a charge on the other possible aggravating elements not presented in his case in order to argue a comparative punishment assessment. Those other factors are simply not part of his case. The court correctly charged on the law applicable to appellant's case. The ground of error is overruled.

The judgment is affirmed.

ONION, P.J., and CLINTON and TEAGUE, JJ., concur in the result.